2.11. Report 3.1. Franciscan Communities Incorporated Appellant vs. Department of the Court at Office Appellees Arguing for the Appellant, Mr. John J. Gershom Arguing for the Appellee Board of Education, Mr. Nessar Klose Arguing for the Appellee Department of Revenue, Mr. Evan Segal May it please the Court Yes, Your Honor I would like to reserve five minutes of my time to rebuttal You'll have more than that for rebuttal, unless you're going to split your time with someone else No, I want to You'll have rebuttal I was told 20 minutes, 15 minutes, and five We proceed, Mr. Gershom Thank you It's Mr. Gershom, right? Yes, it is Thank you Thank you, Justice I represent the Franciscan Communities They are, I don't know if they have an incorporated division called Victory Lakes Victory Lakes is the only Catholic continuing care retirement center in Lake County They are part of the Pontifical Institute, the Franciscan Sisters Because they're an apostolate of the Franciscan Sisters, the hearing officer and administrative law judge has determined that they are the church That they are preserving religious activity, they're performing religious activity, and they are performing the religious purposes of the church That's who I represent There are four grounds for reversal But isn't, given the stipulation by the school district and the department that the church and certainly the sisters are religious organizations And that Victory Lakes was an apostolate of the sisters Under Fairview, isn't really the only inquiry whether Victory Lakes was exclusively used for religious purposes Isn't that our inquiry today? Under Fairview, there were a series of beliefs that were similar but not identical to the beliefs of the Catholic Church and Victory Lakes But in looking at whether it was used exclusively for religious purposes, don't we have to look at the actual method of operation and the facts relating to that operation, counsel? Once you determine that the church's bona fide, good faith, and credible position That the operation of Victory Lakes serves caritas, a service mission of the church The inquiry then should stop and then ask, are they in fact serving seniors, serving the agent as their mission requires? And that's the end of the inquiry from your position, is that correct? That's exactly what Queen of Angels said And what Fairview did, first of all, Fairview did not involve a church It involved an integral part of a church It was not a congregation owning the facility If I had an elder, I handled that case, if I had an elder from Peoria come and say this was church, they would have testified to that Second, what the court found was that the religious beliefs in Fairview were specifically that they were out to serve and receive and obtain salvation And the court said it's necessary, it's not necessary for them to do that What's different here, the critical religious belief that's different here Is that in this case, Father Place testified that the purpose behind the essential ministry of Victory Lakes is that it has to proclaim the word of God It has to worship, and the third element, essential element of the Catholic Church is that it has to perform this kind of caritas service out of love And in Catholic Church beliefs, these three essential activities are in fact required by the church So it's different than Fairview, and the hearing officer makes a mistake because he interprets their belief to stop and say well, you can obtain salvation another way That's not what our case is about Yes, it is a vehicle for salvation, the sister testified that it's a vehicle for evangelization through example But, once you make the conclusion that it is like proclamation of the word, it is like worship, it is equal to those things in the Catholic faith That caritas service is the same as those other essential elements, the church must do those things It's necessary for the church to do those things It's necessary for an individual who's faithful to also do all three of those things But it's more than just a vehicle for salvation, and that's where the test When did the Franciscan communities begin providing this service? It's interesting because the Franciscan communities started this kind of caritas love service 114 years ago 1989 was the first CCRC center The CCRC, Continuing Care Retirement Center, is today's way of method My question was when did they begin this, 1989, correct? CCRC's probably began in the 80's, prior to that they were homes for the ancient Unlike worship, which people don't pay to worship, the people in the CCRC's are paying for the services they're receiving, correct? You have to look at it from the perspective of the mandate of the church The church provides for this service, this caritas service, and the very existence of Victory Lakes in and of itself is a form of church activity, church purpose But it sells this service, counsel, it sells this service, correct? It does not give the service, it sells that service Well, in actuality In this particular instance with Victory Lakes In actuality, they do have a charity policy, they have a gifted care policy, they do give away services Well it was pretty limited in extent, I mean without going into all the details, and obviously we've read the record and what's in the record But pretty, pretty small The reality was that anybody who applied and needed it, got it The real point here is that just because an entity performs what others might perceive as secular activity Does not change the religious nature, or the religious activity, or the religious purpose The reason the sisters do this is because the papal encyclicals, the teachings require them to do it It's part of their charism, right? It is part of their charism Okay, but that was, in Fairview, that was the church's purpose also, was it not? Just the care of the elderly and running the Fairview home? No, actually the religious beliefs in Fairview were much narrower Why is that important? What's the importance of this distinction? Because different churches have different beliefs that are entitled to First Amendment protection And the belief of the Catholic Church, which is before you, again Fairview was not the church, it was not a congregation, it was an integral part of the church But the distinction is that you have the church before you today And the church has certain constitutional First Amendment freedoms, which include the right to practice its religion And to determine what is a religious purpose And the fact that it might, as required by the papal encyclical, the fact that it might perform continuing care or other good services Does not change that it is a religious mission serving a religious purpose It is similar to worship under the eyes of the church It is similar to proclaiming the word It's similar but it's different because a charism, under Catholic theology, refers to a gift A gift from God, and that we, or the church, members of the church, nuns, priests, provide services for free as a gift from God Isn't that the basic tenet of what a charism is? Well, a charism is more what embodies the sisters who are moved But it is different because the Father Place testified A noted theologian who is expert in the healing ministry of Jesus Christ Father Place testified that you can't break these apart That from the church's perspective, it is a different essential function of the church But no less an essential function of the church And that's why I'm a McCulloch in those cases that talk about what resembles worship Who determines the religious views? The pope? In this church, the pope, the doctrines, the history, the scripture, theology? Well, they all had a beginning, and therefore, I'll put it another way Are you telling me that the church is static, and all the doctrine that has ever been written is all there ever will be? I am saying to you that this essential, fundamental requirement of the church goes back to the beginning of the church Because when Jesus lived on earth, he healed, and this goes back... Well, he also fed the masses. Does that mean that you open a restaurant with a papal encyclical that the restaurant should be exempt as well? A restaurant is not, under church law, under our church law, it is not an essential activity of the church I didn't say it was. What I said was, if the church decided that it was, then according to your argument, it is If a church were to come before this court, with certain principles, that they believe in good faith And that they act in accordance with those beliefs, like healthy living... Well, what is good faith? Is that based upon what a reasonable man would believe, or based upon what a reasonable religious person would believe? It's based upon, as the judge found, when he found the witnesses credible That they believed what we put in the testimony, and that they acted in accordance with that testimony Counsel, if we say that the sister's charism imparted a religious use to this property, at Victory Lakes Aren't we really making a distinction on the basis of a religious domination and preference? And isn't that, doesn't that violate the establishment clause in and of itself? No, it does not Why not? Because different faiths, which have different beliefs, are entitled to different protections And if the apostolics, for example, had had a faith, belief, that the practice of what went on on their grounds Was the same as worship, and was the same as proclamation of the word Then it too would be entitled to the protection Just because one is entitled to an exception based on religious use And somebody else may have, similar to what the justice was asking, some other belief That is not a religious, an essential tenet of the religious belief It may or may not be protected, but that doesn't mean one is established over the other But now, if, in essence, I think you're saying religious identity or religious tenets are the only criterion And if that were the case, who would ever pay taxes? Well, you would be able to determine whether somebody was purporting to believe in certain beliefs And it was a sham Nobody here is articulating or taking the position that this Roman Catholic Church entity, these sisters Are not living their faith, and that it's some sort of sham And that the Catholic Burger restaurant example may very well be a sham that a court could look at No, no, no, it may very well be an exercise in good faith The problem I have with your argument is, it seems to suggest that the Catholic Church, if in good faith It believed that it should minister to the masses in every way possible Then, every way possible, the Catholic Church, in its ministrations, would be tax-exempt If that's the syllogism that you seem to be presenting, or at least reducing the odd absurdum That's where it's going, which is if the Catholic Church has a good faith belief And it's determined to be a good faith belief And there's one encyclical after another, for instance You decide that you're going to help wayward travelers whose cars have broke down Makes sense to me, because isn't there a patron saint? I'm not a Catholic, but isn't there a patron saint for travelers? If there was a religious belief that said we have to care for people who are in need Because they've had difficulty in their travels It very well may be a protected activity But here, we don't need to take it to the absurd I didn't say take it, I said reduce the odd absurdum, it's a Latin term My point is that the logic of your argument is that if the Catholic Church decides That it's going to minister in an area, and it's a good faith belief Then, you're exempt from taxation Is that not correct? And this applies not just to the Catholic Church, it applies to every religion One of the things, there are two other tests in Fairview that the court referred to One was that if it was necessary or not for the church I submit under these beliefs it is a necessary essential function The other thing that the Fairview court did was it said it was commercial in nature And the commercial nature became the primary function That the commercial nature could absolve the, could remove the exemption Just so you understand, I believe the Knights Templar were given privileges and rights That exempted them from taxation on virtually everything that they did  It has, as I understand it, historically happened in the past The question is are we going to revisit that broad expanse of rights and privileges Given to any particular religion The only religion in front of you is the Catholic religion And the answer is that you have to deal with the faith that's in front of you And the beliefs that are in front of you I believe that the other thing that distinguishes this case from Fairview Is that when you point to the commercial activities And you say it's like a commercial activity The reality is the church has another standard It's called stewardship And it requires them to act in a certain way But there's no doubt that they lost money there Over a million dollars in the year in question There's no question that they were operating And the sisters said they went there Because there were no Catholic CCRCs in Lake County So that they're not motivated by commercial Yes, they do collect fees And yes, people who can afford to pay all the cases say Doesn't detract from the nature of the entity But it was operated with the view to profit, was it not? If it were operated, no With a view to profit It didn't return a profit But it was operated with a view to profit No, I submit, Justice, that it was operated Because the sisters said there's no Catholic CCRC I submit that the record supports that In terms of, no, I'm not saying why it was established I'm talking about the method of operation Charging fees, service charges, maintenance charges Entrance fees Guarantees of payment or eviction Those business-like activities do not change the basic nature Because again, the canon law requires them To act in a business-like manner But what's really important is That what they did with their gifts of care And with some of the other things that they said We will take care of people Now one thing you have to remember is Care of the aged in and of itself Is a charitable activity Because of the ravages of physical, mental, as you age It doesn't matter if you have some financial needs to pay What the bottom line is Is that you, and that's what the sisters say They take care of people in mind, body and spirits Now I don't know what to do with the questions I'm over time and I obviously would like to address the charitable Well as long as we have questions And you don't have to relieve yourself We'll continue I'm good as long as you are You understand that we cannot overturn the findings of fact By the administrative agency Unless they're arbitrary and capricious The factors that we have been asking about Are those same factors that were considered below? If the findings of fact are either Contrary to the manifest weight of the evidence Or if they're mixed facts and law Which I can submit to you These cases are he found certain facts He rejected certain evidence And he didn't even accept and box certain evidence But if those facts, as he misapplies the law Then the standard is clearly erroneous And like in the Calvary Temple case The Calvary Baptist case Where the court felt that the administrative law judge Drew too narrow of what is a religious use And did not defer to the church's belief That it was an evangelical activity Just like Sister Diane Marie testified Evangelism through example in this case That because it was an evangelical and fellowship activity That it was entitled to a protection and exemption For religious use And there the court overturned the administrative law judge Both in misapplying the law And because the law as applied to the facts Were clearly erroneous And that's what we would ask be done here  The critical thing is Father Place's testimony That what we have here is an essential activity of the church Mandated by the church And because of that It is something that they necessarily have to do And the fact that they provide good services The fact that they charge people who can afford to pay Doesn't change that they're helping For some people who can't afford to pay And then they have to leave if they can't afford to pay I think the record in part reflects that No, Justice, it does not What the record reflects is that they have a contractual obligation And under the IRS rules, Revenue Revenue 72-124 And under their policies They cannot ask somebody to leave once they run out of money That makes this case different than Methodist Old People's Homes case And the fact that they waive entrance fees Look at Sister Mary Frances' testimony Where she said We have waived an entrance fee For somebody who came to us Because that person couldn't get in under the old Victory Lakes Charity So unlike Methodist We in fact have a policy that says We will not ask somebody to leave for inability to pay We have a policy that says We will waive or reduce fees Including entrance fees And we have policies and we have done that when people ask There's no question that that's what the record reflects And all of those things make this case different Than the Methodist Old People's Homes case Back in 1968, they didn't do any of those things And that's why I believe the Court found Methodist Old People's To be non-charitable How long before the Catholic Church purchased Victory Lakes Was it a private business? It indicates from the record, Your Honor, about 20 years It was a not-for-profit run by Victory Hospital And what the record indicates Is that it changed when the Sisters took over And the change was both felt by If you look at, again, things were blocked But if you look at the proffered evidence Of one of the employees who was there Before and after He testifies that he came to faith O'Connor Came to faith because of the way the Sisters acted Because of the commissioning And he was a practicing Catholic Who had fallen away from faith And he came back to faith once they took over So it was operated by a charitable 501c3 But not faith-based, Your Honor Any other questions? Thank you. You'll have an opportunity to make the call All right, Your Honor I did have some point We still have the same amount of time Thank you, Your Honor Ms. Clohessy, is that it? Yes, good morning, Your Honors May it please the Court and Counsel Franciscan Communities Incorporated doing business As the Village at Victory Lakes Is not a charitable institution I'm Vanessa Clohessy And I represent the Intervenor School District I will focus my argument on the law and facts That demonstrate that F.C. at V.L. Is not a charitable institution Under the first five cores and factors Counsel for the Department of Revenue Counsel, would you be kind enough first Before we do that to respond to Counsel's argument That because the Church indicated in essence That the purpose of Victory Lakes Was a religious purpose That we cannot look beyond that To the use and business-like aspect of its operation And conclude otherwise It is the courts, Your Honors That determine charitable and religious use Not the Church, with all due respect To the Roman Catholic Church One important distinction we have to remember Is that Franciscan Communities Doing business as Victory Lakes Is the applicant The stipulation at the hearing Does not change the fact that The cores and factors one through five Relate to charitable use as well as ownership The issue is whether Franciscan Communities Is a charitable institution Not whether the Franciscan Sisters of Chicago Are charitable The Sisters are not the applicant The Church is not the applicant Franciscan Communities, Incorporated At Victory Lakes Is the applicant Because we're talking about a particular parcel of property There are no sisters Even working or living at the property The Franciscan Sisters of Chicago Are a corporate member Of the Franciscan Sisters of Chicago Service Corporation Which is a corporate member Of the Franciscan Communities, Incorporated The applicant And they're the ones who own and operate Sixteen senior living communities Including Victory Lakes That is a fairly remote relationship Counsel for the Department of Revenue Will spend the remaining time Of the argument Addressing and demonstrating How FC's primary use of the property Is not charitable Thereby failing to say I'm sorry, he will also address The property as not being used For religious purposes And he will address Provena As binding precedent As well as the inapplicability Of the new law in section 1586 Of the property code What about the argument that Counsel made and argued in the briefs That the charism of the Franciscan Sisters Calls for them Calling from God To care for the elderly And that this model that they Adopted in the late 80s Is just another way of carrying out That mission That gift of love and care And that if they don't Have a business model They're not going to be able to care for A great number of Elderly citizens The judiciary For 40 years Has said that the criteria To be determined Are under the course and factors To determine whether an entity Is a charitable entity And whether the primary use of the property Is for charitable purposes Your honor My colleague will address the Primary use of the property In the religious sense Stacked against the appellant Are 44 years of cases that have Consistently denied charitable exemptions To nursing and retirement homes And these cases require them To meet the course and factors To prove entitlement to exemption Appellant cannot do that And those cases are unchanged By Provena A common piece which you've already pointed to Of evidence that is looked at By the courts in their analysis Of the course and factors Is the amount and waiver or reduction Of entrance fees It's critical for a retirement or nursing home To waive or reduce entrance fees For the poor to access it Waiver of entrance fees helps show That charitable benefits are available To all who need and apply for them If there's no waiver or reduction The entrance fees are an obstacle To those who would seek The charitable benefits Is charity inconsistent with operating a business With a view to profit? It's not inconsistent Your honor We don't expect The Franciscan communities At Victory Lakes to go into bankruptcy In order to show charity The important point to remember Is that it had The fact that Franciscan communities At Victory Lakes has not met The five course and factors Regarding it being a charitable entity Well they had the gift of care Did they not? Well they do have that program And they allowed people to stay Even though they could not pay? Isn't that charity? That can be considered charity But what is the numbers That are important to look at Is that only 12 out of Maybe 320 residents Were given a Reduction in their monthly fee No new applicant For residency Was given a waiver or a reduction Of the substantially large Entrance fees At the Village of Victory Lakes Franciscan communities Charge substantial entrance fees Upfront deposits and monthly fees For each portion of the VL property For example the amount of Entrance fees for the independent living units Started at nearly $128,000 and increased To more than $332,000 And FC failed to Prove that it ever waived Or reduced these entrance fees For a new resident even once The most that FC could prove Is that some monthly fees Were reduced for a Limited number of residents And a point to keep in mind Is that FC failed to provide Evidence of the actual cost Of that reduced fee care And instead pointed to what It charged for the services A cost and a charge can be Two very different numbers The ALJ was entitled to conclude That the amount of entrance fees And the failure to waive or reduce The fees weighed heavily against Tax exemption In the Windermere case, entrance fees Were waived for two new residents And even that wasn't enough Because like here, Windermere was a Luxury facility primarily designed For those who could afford to live there Also here like in Windermere VL financially screened All prospective residents to ensure That they had sufficient Financial resources to commit To their care, thus any Charitable benefits were limited To those who could first afford To pay the substantial upfront Deposits and entrance fees So are you saying charity was not Dispensed to all who needed it And applied for it? Yes that is exactly what we're saying FC cannot and does not distinguish Windermere Now turning to the individual Causing factors, the facts Demonstrate that FC is not a Charitable organization in its Operation of VL First, FC is not a charitable Organization because it did not Dispense charity to all who needed It and applied for it. The ALJ Pointed to the gift of care committee minutes Which conclusively demonstrate That not all individuals who Applied for the gift of care program received It. For example, the March 18th Minutes show multiple individuals Being asked to spend down Their savings and assets and the October 15th minutes show three Applications were deferred for Exploration of whether Medicaid was Available first. Additionally We're not Fact finders here at the appellate Court so are you arguing That the Administrative law judge's Decision was clearly erroneous On each of these points or No Your honor There was no clear error By the administrative law judge So you're saying that all of The conclusions of the administrative law judge On each of these points Was proper To the best of my knowledge Your honor I am speaking to that And my colleague will address that Further if necessary I have one more question When you First stepped up you started Talking about title I think I'm sorry title title property Who owned it Who these people were Gave a roster of what was Going on Yes Mr. Durso was arguing about Religious use and so My concern My question to you is How does the roster Apply to whether or not There's a religious Use being Used here does a religious use Have to be only In instances where title Is in an Exempt organization or can A religious use Come into effect When it is owned by Someone as you suggested Which is not a charitable organization These are two parallel analyses Your honor Under the cores and factors we consider Whether or not an entity or an institution Is charitable But the most important And turning point is whether Property is primarily used For charitable purposes But I was asking you about religious use Which is not a charitable use With all due respect your honor My colleague is going to address Religious use Never mind Any other questions Okay Thank you Good morning May it please the court Counsel I'm Assistant Attorney General Evan Siegel On behalf of the Illinois Department of Revenue And its director Brian Hager There's a simple reason Why for four decades Entities like Francisca Communities has not Withstood cases That analyze whether it's a religious Or charitable Exemption candidate And that is because They're fundamentally businesses And this entity is no different And for the same reasons that It doesn't qualify For a charitable exemption It doesn't qualify For a religious one either I wanted to address Justice McClaren Your question about religious use First there is no requirement Under the Illinois Constitution Or section 1540 That an entity seeking A religious exemption be owned By a religious entity So it differs in that respect From the charitable component And this court Should affirm the denial of a religious Exemption for two independent Reasons Based on the same facts that Preclude the entity from getting A charitable exemption Logic and common sense and the record And all the things that the court has pointed out This morning show that this is More a commercial enterprise Than a religious one It follows that it's predominantly a business And significantly the department Knows of no Religious exemption that has Ever been granted to A healthcare entity be it a hospital Or A nursing home or a pharmaceutical Company or a doctor's office And it was a business operated With a view to Promoting or carrying out The charism, the religious mission Of the sisters, correct? That's correct, Your Honor So why should we not look to that? Why, as counsel argued, isn't that What we need to focus on? No, as Your Honor pointed out That's the beginning of the inquiry Not the end That But why is it not the end? Counsel was adamant that that is the end also It's not under case law What case are you relying on? Many of them The unanimous religious portion of the Provena decision shows that You have to take a good faith In the entity's expression of its religious views But then also under the Illinois Constitution You have to look at the religious use And so everything that a religious Organization or a subsection Of a religious organization does on a property May be religious in character And the department does not question One iota that everything That FC does From changing bedpans As they say in their brief To getting out a bill Is done with a religious purpose But you also have to look Under this Court's decisions And communications And others that we've cited in our brief Whether, this is the key question Whether the use, the day-to-day use The practical use, the financial Incentives and actions Is predominantly A religious exercise With some commercial overtones Or the inverse Primarily commercial With some religious Or not as fully A religious Through and through Experience As in the other example Why was it not religious with the business overtones? I mean, they had a ceremony In which the staff Was I don't I'm not using the correct terminology now I don't recall, but in essence Appointed with and blessed With the mission Of the sisters Right, I think your Honor Is referring to the inauguration Or installation of the FC's new Head Which took place in their chapel Everything that they do is religious Everything, feeding people, caring for people Wheeling them around the facility Their activities So why were they not to look at it as religious With the business overtones instead of the opposite? Because as your Honor pointed out Everything that they do Is for a charge as well This entity took in 17 billion dollars in revenues And 99% of those revenues Were fee-for-service payments They don't do a lot of fundraising Which distinguishes them from Say a soup kitchen Or a traditional House of worship They also are driven by business concerns It may well be that The sisters decided to Acquire this property because of its Ideal location Because it was the only such facility In Lake County But the minutes of their meetings show that they Also considered like a business Organization, the market Whether to acquire this entity Because of its ideal market and financial Position, its prime marketing location Third, the parent FCS FSCSC Is a healthcare Group of five states Illinois, Kentucky, Texas and others It's the eighth largest provider Of non-profit elder care service In the United States And it's among the fastest growing Wouldn't any money that they acquired Be used for the stewardship Principle that they operated by In other words to enable them to continue Their mission and their charism Well it may but that doesn't matter Under the law as this court held in the First Presbyterian Church versus Zenger Merely putting the Money, the funds back into the Facility doesn't make it any more Religious in character If it's not religious to begin with They're still Their business model is still to charge people And as my colleague pointed out If you come into this facility Into independent living and buy the upper Model and live there for five Years that's going to cost you Half a million dollars So this is Fundamentally a business And secondly Why can't a business be a religious Use? If Religious persons In good faith Decide That What they wish to do Is part Or parcel of a religious calling Or a mission statement Why logically Isn't it considered A religious use? For three reasons And to say it's because it's a business Doesn't seem to me to be very Logical In other words how are you going to Disprove the syllogism You don't disprove it by saying Because it's a business Because if you accept The premise of the conclusion Your statement Really is not logical Well I disagree With a few things but I think The key consideration As Justice Burkett pointed out In the religious context Talking about charism is Where's the gift? That's the key analysis of the charity Charity Is one thing religious use is another A church If it's for Classically for religious purposes There doesn't have to be any charity Given in a church I disagree under the law This court Okay you're saying that religion Has to be also a charitable use Or has to exhibit Charity Yes this court has a case Again I think it's the Zender case That I just mentioned Which involved A church property That was giving out Free toys Was it a church Where they held services I believe it was part and parcel Of the same property Well I know about part and parcel Of the same properties Even school districts have problems With tax exemption when they start Having a non-educational use So the question is How does the fact That it's a business Make it a non-religious use If the religion believes It to be a religious use There is A hundred years of precedent That requires the courts to focus on Is it based upon logic Or is it based upon something else The other thing you suggested was common sense Yes Now is common sense encapsulated And incorporated into case law Or statutes or what It is because something can be two things At the same time Right I could have A pizza Which I often have And I could have vegetables on one portion And the question is Is it primarily a vegetable pizza Or is it primarily a cheese pizza At the same time they follow their charism And everything that they do is religious Including billing people Everything that they also do is commercial And the distinction between that toy case Is easily seen with another Case from this court If I may finish my answer Where it was the Salvation Army case Part of a Religious organization And every The store that was used to sell items Was a retail store There was very little Given for free And so that is I think that is how we think common sense was About what a business is They also didn't do anything without a view to a profit And so Because everything that they Do in essence is predominantly commercial The department correctly denied The charitable exemption And also follows that the religious Exemption cannot stand And unless the court has any further questions We ask you to affirm Thank you I wanted to talk about the charitable use Which I was not able to get to in the first And then we brought some of the arguments If I may have the time to do that I think the most important first point And it's amazing to me That when they cite in their briefs At page 19 The interveners And when the Attorney General Cites in his brief at page 29 That when you look at the Methodist Old People's Homes case When you look at the factors In the Methodist Old People's Homes case And you apply them To what the judge did here They specifically in their brief said That factors 1 2 4 and 5 The obstacles is 5 Those go to what is a charitable institution And it says that Right in the Methodist Old People's Homes case The only issue before you Because if you look at the judge's opinion Footnote 4 The department who is the Attorney General here Represented At the very beginning of the hearing said That Franciscan Corporation Franciscan Communities Which by the way is church And does own the land Franciscan Communities Is under footnote 4 A charitable organization So that we're not talking about Because the statute for charity Has two prongs One is it a charitable use And second is it The property owned by an organization That is a charitable institution And four of the prongs Everything that they're arguing about Related to what Do you look for in a charitable institution And they admit that in their briefs The only thing left Is what Under CREER Which was Corazon Factor number 3 And the judge's You gotta look at the method Because the judge He misnames them, he puts them together Again, he doesn't apply the law correctly But if you look at the Corazon case There's the CREER case And the CREER case says That you have to take care of an indefinite number of persons And we do that In fact he beat us up On the religious use saying You let Catholics and non-Catholics in You let non-believers in But what else would an evangelical organization do Especially when the church requires You take care of all the people Who are to be You don't distinguish between Catholics and non-Catholics But on the charitable When you look at the CREER case It goes on to say Are you serving an indefinite number of people And if you read that case The Supreme Court case back in 1893 It talks about things that are charitable Like relieving suffering Like taking care of the sick Like Erecting a library Which was the case in that case And it said or Otherwise reducing the burden of government And we've gotten the briefs that we otherwise reduced the burden of government Which would meet that standard We also have though We let anybody in the door And what that case You let anybody in the door We let anybody in the door No, we let anybody in the door And that's another thing Where the record is twisted And you have to look You have to look at Sister Frances Clare's testimony Where she said In particular That there was a case that came up to her And thanked her When she was out for one of the commissions And said to her I couldn't get in to Victory Lakes With the previous owner And you called me And you told me about your new gift of care And you waived $16,000 of my gift of care Which put me over the hump And let me come in And you also took the position That if you look at the Again you look at the offer of proof And you look at Sister Frances Clare's She started to testify about what this witness told her And then of course the administrative law judge said Oh no, we can't put that person on So we had to do it for an offer of proof At the end of the rebuttal witnesses But what she says in her offer of proof Is that the other reason she came Was because she knew If she ran out of money The sisters would not ask her to leave Because that was their policy And that was articulated Another thing he did And I think this might have been what you were referring to Justice When we talk about these number of people Applied for the gift of care And one person they said applied And went somewhere else for Medicaid If you don't spend on your assets You're not entitled to Medicaid One of the ways we lessen the burden of government Is we keep them in IL Independent living and assisted living So they keep their assets and don't have to spend them Down in the nursing home In that particular case involving Resident AM Resident AM did not fill out All the paperwork And left, this is what the record shows Not what the judge, not what the judge refers We may sound like we blocked her What the record shows is that After she filled out the paperwork That she refused to fill out the paperwork as required And she went to another facility That didn't check And they applied for Medicaid and she got it there It wasn't that we pushed her out to go to the Medicaid facility In fact the record shows That when the sisters took over They participated in Medicaid It wasn't the Medicaid facility before that So you've got to look at the Correson case You've got to look at the issue And the real issue is commercial they say You're right, it's not logical It does not follow the syllogism And the Fairview case does not follow the syllogism But whether it's commercial and charity Or whether it's commercial The record shows, he makes a big thing about EBITDA EBITDA is earnings Before interest Taxes and depreciation The record shows that the interest On the property was 1.7 million dollars And he says well they're earning a profit Because they've got 1.5 EBITDA EBITDA is what you look at Before you buy a facility It's a mathematical formula It's not profits over losses When you look at the Income, the profits The revenues over expenses You'll find Franciscan communities lost 3 and 5 million dollars in years in question Victory Lakes lost 800,000 and 2.4 million And in calendar year Because of the calendar year's work We had to put in evidence on both In calendar year 2007 It lost 1.1 million dollars The testimony of Sister Frances Claire who was the chairperson of the board Said I was against going there Because it was too much to undertake But I was convinced And she's the major decision maker Her and Sister Diane Marie who also testified The reason we did it Under the Franciscan decision making model Was because there was no Catholic CCRC It is not a commercial activity They in fact go there because They want to be And serve God Through the care of others Another thing that the Career case shows The care of the elderly Even if they have means Is a form of Charitable activity When you get old When you get sick When you can't walk as well When you can't think as well That's when you need Mind, body and spirit And that's what they provide That's what charity is That's what career talks about So I don't know how to get From Again just like the Administrative Law Judge All of these factors When the Administrative Law Judge Specifically in footnote 4 Of his A12 I'm sorry, A19 Particularly said The charitable institution is not an issue Last couple points After you look at What happened here In my 35 years of practice I've never made a motion to disqualify a judge Never You have to read the motion to disqualify the judge To figure out what went on here There was a predetermined Bias of the judge To rule against us And it's clear if you read those motions From this trial There was a denial of due process And I submit All due respect If this is not a religious use And if this is not Particularly a religious use It violates the church First amendment Free exercise and free expression And that's the holy angels case That everybody cites in Fairview That says you cannot Let a government official Define the beliefs Or the contents And the beliefs here Were that the activity Of caritas love The very activity of vibrant living Was both Charitable and religious Like your inner varsity second district case Could be both charitable and religious And that it was fulfilling An essential tenet of the faith Like McCulloch Like the cases after it's cite That it is like Worship It is like It is like proclamation of the word All three of those things go on But under the catholic faith Caritas, the care of people Is in and of itself A form of Essential tenet And I finally refer you To the Provina case Which from my perspective Is not a Precedential value on charitable use And what it does say Is on Religious use It says the following When it's denying religious use By saying that Provina Hospital, the owner of the property Did not prove its religiosity Most of the evidence was put in On the operating hospital So that's the ruling of the case That's where the two justices join On religious use But it said, we note moreover This is the panel of three One of Justice Fitzgerald Who is no longer with the court They said this We note moreover That no claim has been made That operation of a free-based medical center Is in any way essential To the practice Or observance of the catholic faith That is the case before you That is our assertion That is what the record shows That's why Provina didn't get to it They didn't have the record In this case We are taking the position And the record is clear That what we have is a claim That operation Of a Free-based CCRC Which I submit does give away free care Now they don't like the numbers Because their number, what it is They want a mathematical formula Even though the legislature recently checked Their formula That no claim has been made That operation of free-based CCRC Is in any way Which is what we are saying Essential to the practice And observance of catholic faith On this basis We believe that the evidence On religious purpose Was clearly erroneous The definition of what is religious Was too narrow We believe on this basis Not to so violates the first amendment On other grounds We believe that The Clearly erroneous What they did on the charitable Was clearly erroneous And we believe that the whole process The whole hearing Before the administrative law judge Despite our best efforts Violated our due process rights And set forth a motion to disqualify Thank you your honor There will be a short recess